IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SWAIDAN TRADING CO., LLC,

    Plaintiff,

 v.

M/V DONOUSA, her engines, tackle, etc., *in rem*, and DILETON MARITIME, S.A., ANDROUSSA SHIPPING, S.A., ARETOUSSA SHIPPING, S.A., and ERIKOUSSA MARITIME, S.A., *in personam*,

    Defendants.

No. 3:18-cv-00398-HZ

OPINION & ORDER


Kent Roberts
Daivd R. Boyajian
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204

 Attorneys for Plaintiff

Molly J. Henry
Valerie I. Holder
KEESAL,YOUNG & LOGAN
1301 Fifth Avenue, Suite 3100
Seattle, WA 98101

 Attorneys for Defendant Aretoussa Shipping S.A.

1- OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Swaidan Shipping Co., LLC brings this admiralty action against Defendants M/V DONOUSA *in rem* and Dileton Maritime, S.A., Androussa Shipping, S.A., Aretoussa Shipping, S.A., and Erikoussa Maritime, S.A., *in personam*. Specially appearing Defendant Aretoussa Shipping, S.A. moves for security for costs and damages on its counterclaim for wrongful attachment. Plaintiff posted $500 as security for costs as required by Supplemental Admiralty Rule E(2)(b) and Local Admiralty Rule 1020-1. Plaintiff otherwise opposes Defendant's motion. For the reasons that follow, the Court denies Defendant's Motion for Security for Damages.

## BACKGROUND

In early 2017, Defendant Androussa, the registered owner of the vessel M/T ANDROUSSA, issued a clean bill of lading for a shipment of gas oil purchased by Plaintiff. Compl. ¶¶ 9–10, ECF 1. While in transit, the vessel was stopped and boarded by Coalition Forces led by the Kingdom of Saudi Arabia and directed to Jeddah for inspection. *Id*. at ¶ 11. Plaintiff alleges that its cargo was confiscated after the Coalition and Saudi Arabian forces determined that the ship was likely used for smuggling illegal weapons. *Id*. at ¶¶ 13–14.

On March 7, 2018, Plaintiff filed this ancillary admiralty and maritime action against Defendants—alleging breach of contract, negligence, fraud, implied warranty of workmanlike performance, and alter ego liability—in order to obtain security for Plaintiff's claims currently proceeding in arbitration in London. *Id.* at ¶ 89. Plaintiff also moved *ex parte* to attach the M/V DONOUSA, the vessel owned by Defendant Aretoussa, pursuant to Admiralty Rule B on the grounds that Defendant Aretoussa is the alter ego of Defendant Androussa and Defendant

Dileton, the manager of both the M/T ANDROUSSA and the M/V DONOUSA. Pl. Ex Parte Mot., ECF 6.

Plaintiff's motion was granted by this Court on March 8, 2018, and the M/V DONOUSA was attached on March 25, 2018.[1] Order, ECF 11. On April 12, 2018, Defendant Aretoussa filed a restricted appearance and answer to Plaintiff's Complaint.[2] Answer, ECF 43. Defendant Aretoussa also brought a counterclaim against Plaintiff for wrongful attachment. *Id.* at 11. Defendant alleges that Plaintiff knew that Defendant was not the alter ego of Androussa or Dileton and acted in bad faith, with malice, or with gross negligence in filing its verified complaint. *Id.* at 10–11. As a result of the seizure of the M/V DONOUSA, Defendant alleges that it has suffered damages totaling in excess of $5,165,210.50. *Id.* at 12. Defendant's present motion seeks counter-security for its claim for wrongful attachment. Def. Mot., ECF 44.

## STANDARDS

Supplemental Admiralty Rule E(7)(a) of the Federal Rules of Civil Procedure governs security on counterclaims in admiralty actions:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Fed. R. Civ. P. Supp. Admiralty R. E(7)(a). "The purpose of Supplemental Rule E(7) is to 'place the parties on a basis of equality as regards security.'" *Whitney-Fidalgo Seafoods, Inc. v. Miss Tammy*, 542 F.Supp. 1302, 1305 (W.D. Wash. 1982) (citing *Vic Frank's Boat Co. v. Yacht*

---

[1] While this motion was pending, Defendant Aretoussa posted a $4,000,000 bond, and the M/V DONOUSA was released on May 25, 2018. Bond, ECF 82; Stip. re: Bond, ECF 83.
[2] Currently pending before this Court is also Defendant Aretoussa's Motion to Vacate the Attachment on the grounds that Plaintiff has not sufficiently stated a claim for alter ego liability against it. Def. Mot. Vacate, ECF 33.

3- OPINION & ORDER

*SUNCHASER III*, 508 F.Supp. 609, 610 (W.D. Wash. 1981)). "Although the language of this rule is automatic, a district court has discretion to excuse a plaintiff from posting counter-security 'for cause shown.'" *Seaworthy Serv. Inc. v. NANEA*, No. 09-5062BHS, 2009 WL 1174654, at *2 (W.D. Wash. April 28, 2009) (citing Fed. R. Civ. P. Supp. Admiralty R. E(7)(a) and *Whitney-Fidalgo S*542 F.Supp. at 1302). The burden is on the plaintiff to show that "good cause exists to relieve the plaintiff of its obligation to provide counter-security." *Id.*

Courts have looked to two different factors in determining whether to grant counter-security. Some courts focus on the plaintiff's ability to satisfy a judgment. *Seaworthy Serv.*, 2009 WL 1174654, at *2; *see also Whitney-Fidalgo*, 542 F.Supp. at 1305 ("It is intended only as a means by which to remedy a defendant's insecurity in respect to the likelihood of satisfying a judgment awarded by the court."). Others look to the ability of the plaintiff to post counter-security. *Seaworthy Serv.*, 2009 WL 1174654, at *2; *see also MMI Int'l, Inc. v. M/V SKYROS*, 1991 A.M.C. 1264, 1273 (N.D. Cal. 1991) ("Given that the Rule assumes security will usually be required, and given that two of the three most recent cases require counter-security from a claimant who can afford it, this Court believes Allied's motion should be granted.").

## DISCUSSION

Defendant moves for counter-security in the amount of $10,330,421 on its claim for wrongful attachment. Def. Mot. 8. Defendant alleges that it has suffered damages—including various expenses and the potential loss of a charterer—as a result of the attachment of the M/V DONOUSA. *Id.* at 6. Plaintiff opposes Defendant's motion on the grounds that its counterclaim for wrongful attachment does not "arise out of the same 'transaction or occurrence' that [gave] rise to the original underlying maritime claim." Pl. Opp'n 2, ECF 65. The Court agrees with Plaintiff.

Though "a party has the right to recover damages for wrongful seizure in admiralty on a showing of bad faith, malice, or gross negligence," *Tennyo Maritime, Inc. v. Norsk Hydro S.S.*, 1994 A.M.C. 2687, 2689 (E.D. La. 1994), several courts have found that claims for wrongful attachment or seizure are not grounds for counter-security under Rule 7(E). In the oft-cited Fifth Circuit case *Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN*, the circuit court held that "[w]hether or not an action for wrongful seizure . . . may be asserted as a counterclaim in admiralty practice, counter-security under Rule E(7) may not be required for such a claim." 747 F.2d 958, 964–65 (5th Cir. 1984). Analogizing to the test for compulsory counterclaims under Fed. R. Civ. P. 13(a) and claims for malicious prosecution, the Fifth Circuit noted that counterclaims for wrongful seizure generally do not arise out of the same transaction or occurrence as the claims underlying the original action because there is no "logical relationship" between the claims.[3] *Id.*

Some courts have seized upon the Fifth Circuit's holding in denying requests for counter-security. *See Norton Lilly Int'l., Inc. v. Kinatsi*, Civil Action No. 16-4118, 2017 WL 515095, at *3–4 (E.D. La. Feb. 8, 2017) (declining to grant counter-security for fees associated with a claim for wrongful attachment that did not clearly arise from the same "pre-attachment occurrences" that gave rise to the other alleged damages); *May Ship Repair Contr. Corp. v. Oil Barge HT-100¸* 2009 A.M.C. 721, 724 (E.D.N.Y. 2009) ("Wrongful arrest claims, however, do not arise from

---

[3] In the Ninth Circuit, a claim is compulsory where "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Hydranutics v. Filmtec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) (citing *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987)). In *Hydranautics*, the circuit court found a claim for predatory patent litigation was not a compulsory claim in a patent infringement suit and analogized it to a malicious prosecution claim, which "cannot be asserted as a counterclaim to the original suit which furnishes its predicate." *Id.* at 536–37. *But see Pochiro*, 827 F.2d at 1252 (holding that courts should read "transaction or occurrence" broadly and finding that abuse of process claims are compulsory counterclaims).

5- OPINION & ORDER

the same transaction or occurrence as the claims that initiate such arrests."); *Tennyo*, 1994 A.M.C. at 2689 (denying a request for counter-security on a wrongful seizure claim); *see also Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394, 402 n.5 (2d Cir. 1995) ("[C]ountersecurity for a wrongful attachment counterclaim may not be required under Rule E(7), because the wrongful attachment would not have arisen out of the same transaction or occurrence with respect to which the action was originally filed."). Others, looking to the specific facts of the case, have found that a counterclaim for wrongful attachment arises out of the same facts that gave rise to the original claims. *See State Bank & Trust Co. v. Golden Meadow v. Boat D.J. Griffin*, 731 F.Supp. 770, 775 (E.D. La. 1990) (noting that "*Incas* is intended to apply only in situations where the wrongful seizure counterclaim does not arise out of the 'same aggregate of operative facts'"); *see also Norton Lilly*, 2017 WL 515095, at *3 (applying *Incas* and *State Bank & Trust* and analyzing which damages arose out of the same facts).

For example, in *State Bank*, the district court determined that a counterclaim for wrongful seizure was compulsory. 731 F.Supp. at 770. There, the plaintiff brought suit *in rem* against two vessels and *in personam* against their Operators to foreclose on maritime mortgages securing the plaintiff's promissory note. *Id.* at 771. The Operators of the vessels filed a counterclaim for wrongful seizure. *Id.* at 772. The district court distinguished its case from *Incas*, where the claims of commercial losses and business reputation resulting from the seizure did not have the same operative facts as plaintiff's claim for breach of contract, because both the claim and counterclaim in *State Bank* depended on the validity of the promissory note and execution of a loan. *Id.* at 774–75. Specifically, the Operators alleged that the plaintiff knew the individual who entered into the note had no authority to do so. *Id.* at 775. Thus, "[t]he claim and the

counterclaim [were] logically related because they both involve[d] questions of [the individual's] authority to encumber the Boat Operators' assets as well as State Bank's alleged knowledge of that lack of authority." *Id.*

Similarly, in *Norton Lilly*, the district court found that counter-security was appropriate for some of the alleged damages for the defendant's counterclaim for wrongful attachment. 2017 WL 515095, at *1. There, the plaintiff was the port agent for the M/V Kinatsi. *Id.* While in port, the M/V Kinatsi incurred dockage charges because of delays. *Id.* The M/V Kinatsi denied liability for the delays, but the plaintiff refused let the vessel to sail and detained it in port because of the unpaid dockage charges. *Id.* After plaintiff paid the charges demanded for the delay, the plaintiff brought suit against the vessel *in rem* for the costs it incurred as its port agent. *Id.* at *2. The defendant brought a counterclaim for wrongful attachment against the plaintiff and requested counter-security. *Id.* Granting the defendant's request in part, the Court found that damages alleged for fees incurred from the same loading delays underlying the complaint and the detention of the vessel by the plaintiff prior to the filing of the lawsuit arose from the same transaction or occurrence as the original claim for costs incurred by the plaintiff as the port agent for the M/V Kinatsi. *Id.* at *3. However, it also found that it was unclear whether the additional attorneys' fees incurred for the unlawful detention arose out of the pre-attachment occurrences or were "properly attributable solely to legal services provided in connection with and in response to the . . . arrest of the M/V KINATSI ordered by [the court]." *Id.* at *4. The court accordingly declined to grant counter-security relative to the attorneys' fees that did not clearly arise out of the same pre-attachment facts underlying the original claim. *Id.*

Here, Defendant contends that there is a "logical relationship" between Plaintiff's alter ego claim and Defendant's wrongful attachment counterclaim. Def. Reply 3. Defendant suggests

that its counterclaim for wrongful attachment is based on the same facts underlying Plaintiff's claim for alter ego liability because it alleges in its counterclaim that it is not the alter ego of either Defendant Dileton or Defendant Androussa. *Id.* at 3.

The Court disagrees. First, the underlying claim in this action is for breach of contract. Plaintiff's claim of alter ego liability is not an independent cause of action. Rather, it is a theory of liability for the underlying breach of contract claim. *See British Marine PLC v. Aavanti Shipping & Chartering Ltd.,* No. 13 CIV. 839 BMC, 2014 WL 2475485, at *2 (E.D.N.Y. June 3, 2014) ("[C]orporate veil piercing is not an independent cause of action, but rather is a means of imposing liability on an underlying cause of action."); *see also Five Points Hotel T'ship v. Pinsonneault*, 697 F. App'x 549, 550 (9th Cir. 2017) (noting that "other jurisdictions, statutes, treatises, and restatements . . . specify that alter ego is a procedural mechanism to enforce an underlying claim and not an independent cause of action.").

Second, as Defendant admits in its reply brief, to succeed on its counterclaim it must demonstrate that Plaintiff acted in bad faith, with malice, or with gross negligence in filing this action. *See Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) ("The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party."); *see also* Def. Reply at 3–4 (alleging that Plaintiff "knew" that Defendant was not the alter ego of either Androussa or Dileton prior to filing the present action). This case is distinguishable from *State Bank*, where the plaintiff's knowledge would be established by the same facts underlying the foreclosure, and *Norton Lilly*, where some of the counterclaimant's damages pertained to the seizure central to the underlying claim and wholly unrelated to the filing of the lawsuit. In this case, the damages alleged are only related to the Court's attachment of the M/V DONOUSA. And the issue of Plaintiff's bad faith,

negligence, or malice will not be proven by the facts underlying the breach of contract claim or its theory of alter ego liability. Because Defendant's claim does not arise out of the same transaction or occurrence as the present action, the Court declines to grant Defendant's motion for counter-security.

## CONCLUSION

Based on the foregoing, Defendant Aretoussa Shipping's Motion for Security for Costs and Damages [44] is DENIED.

IT IS SO ORDERED.

Dated this \_\_\_\_13\_\_\_\_ day of July, 2018.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

9- OPINION & ORDER